upon. The evidence produced by the brokers established complete performance on their part so far as performance by them was possible. In this view of the case, the evidence offered tending to show that the defendant's title was defective, the exceptions taken thereto, and the arguments advanced upon the special agreement aforesaid, are immaterial. The amendment conforming the pleadings to the facts proved is also immaterial. It did not prejudice the defendant in any manner.

Upon the conclusion of the trial, both sides asked for the direction of a verdict, and the court ordered the jury to find for the plaintiffs, the exceptions to be heard in the first instance at general term. The general term overruled the exceptions, and ordered judgment for the plaintiffs. The power of the general term ended there. Douglas v. Haberstro, 10 Abb. N. C. 6. After obtaining the order for judgment, the plaintiffs might have applied, on notice at special term, for an extra allowance, when the defendant would have been heard as to the propriety of granting such relief, and as to the amount. This is the practice when the application is not made at the trial. Howe v. Muir, 4 How. Prac. 252; Railroad Co. v. McCoy, 9 How. Prac. 339. The allowance granted by the general term, having been made without notice or hearing, was unauthorized. Briggs v. Brooks, 79 Hun, 394, 29 N. Y. Supp. 794; Toch v. Toch, 9 App. Div. 501, 41 N. Y. Supp. 353.

As to the allowance, therefore, the judgment must be reversed, but in other respects affirmed, without costs upon this appeal. All concur.

---

(19 App. Div. 415.)

### In re ATLAS IRON CONST. CO.

(Supreme Court, Appellate Division, First Department. July 2, 1897.)

1. RECEIVERS—FEES AND EXPENSES—PRIORITY.
    Fees and expenses of the administration of a receivership, in proceedings for the voluntary dissolution of a corporation, come in ahead of all claims against such corporation.

2. SAME—RIGHTS OF ATTACHMENT CREDITOR.
    When property, which has been attached as the property of a corporation, is taken into the possession of a receiver of such corporation, under the direction of the court, subject to the attachment, the receiver's possession is subordinate to the specific lien of the attachment, and such lien comes in ahead of the receiver's claim for compensation or disbursements; but if the lienor is a party to the proceedings, and the receiver takes into his possession the property of the lienor, as well as of the former owner, to protect it for all parties, the lienor's interest is chargeable with the expense of protecting the property or changing it into money.

3. SAME—LIEN FOR TAXES—PRIORITY.
    Neither the state nor a municipal corporation has a lien for taxes, superior to the rights of the attaching creditors, upon property in the hands of a receiver of a corporation, which has come to the hands of such receiver subject to attachments, levied upon it before any lien was acquired by the state or municipal corporation.

4. SAME.
    Both the state and a municipal corporation have a lien for taxes upon the property of a corporation in the hands of a receiver in dissolution proceedings, superior to the equitable claims of creditors, but subordinate to the expense of the receivership.

Appeal from trial term.

In the matter of the voluntary dissolution of the Atlas Iron Construction Company an order was made directing a distribution of the moneys in the hands of the receiver appointed for the corporation, and from said order certain claimants appeal. Modified.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, INGRAHAM, and PARKER, JJ.

R. G. Monroe, for receiver of taxes.

Wm. E. Stillings, for appellants Donegan & Swift.

Almet R. Latson, for appellants Froment & Co.

John M. Perry, for respondent receiver.

Clarence W. Francis, for respondent comptroller.

INGRAHAM, J. The receiver in this case was appointed in voluntary proceedings for the dissolution of a corporation on the 11th day of September, 1895, and at that time the sheriff had levied upon certain property of the corporation under warrants of attachment against the corporation. Subsequently the property thus levied upon was, under an order of the court, turned over to the receiver, subject to the attachment theretofore levied upon it. Such property thus levied upon by the sheriff realized the sum of $1,669.84. The receiver proceeded to reduce to possession other property of the corporation not levied upon by the sheriff, and he has now in his possession, including the amount realized from the property so levied upon, the sum of $2,424.64.

The order appealed from directs the receiver to retain in his hands the sum of $1,000, as a fund from which to pay the necessary expenses of administration, including his fees as receiver. We think this provision is clearly right. The fees and expenses of administration are disbursements necessary to realize the sum of money from the assets of the corporation to distribute among its creditors and stockholders. Such disbursements are necessary before the property can be reduced to money, and the debts of the corporation collected. They come in ahead of all claims against the corporation, because their application is necessary to produce the fund from which such claims are to be paid. But for such services rendered by the receiver or his counsel, and his necessary disbursements to pay for which this fund is reserved, there would be no fund for distribution among the creditors. A receiver cannot be expected to devote his time to the collection of the assets of a corporation for the purpose of distribution among those entitled thereto, without compensation, or without being repaid the necessary expenses paid by him in the discharge of his duty of collecting the assets and turning them into money. Thus, expenses and disbursements are just as much a charge upon the fund after he has collected it as would be the amount expended for the completion of property in process of manufacture which had come into the hands of the receiver before completion, and which he afterwards sold for a sum largely in excess of the amount that he could have procured for it in the condition in which it came into his hands. In either case the disbursements are necessary in order to provide the fund which is to be distributed, and are to be paid before any of the claims against either

the property or the former owner of the property. When a court of equity takes property into its possession for distribution among those entitled to it, the necessary costs and expenses for the protection of that property or fund are, of necessity, a lien upon the fund, superior to that of the person who was its former owner, or to those who succeed to the former owner's rights. Where there was a specific lien upon the property created before the receiver took possession, and where the receiver's possession is subordinate to that lien, the lienor's interest not vesting in the receiver, then, of course, the lien comes in ahead of the receiver's claim for compensation or disbursements. Where, however, that lienor was a party to the proceeding, and where the receiver is ordered to take into his possession the property of the lienor, as well as of the former owner, to protect that property for the lienor and others interested in it, then the lienor's interest becomes chargeable with the proportion of the expenses necessary to protect the property, or to change it into money for the lienor's benefit. The property of this corporation was levied upon under attachments. The attaching creditors had a right to have the property disposed of to pay their liens. The court, however, as a court of equity, took the property, and directed the receiver to turn it into money, and to hold the money in place of the property, the proceeds to be applied, so far as necessary, to the payment of the liens. The expense of turning this property into money, and dividing it among the various attaching creditors, was one that must be borne by the property thus turned into money for the benefit of the attaching creditors and others having a right subordinate to them. If the property had been sold by the sheriff, the sheriff's fees and disbursements would have been payable before anything would have been payable to the attaching creditors.

It does not appear that the attaching creditors opposed the granting of this order directing the attached property to be delivered to the receiver; nor does it appear that this delivery to the receiver was made solely for the benefit of the corporation. The amount realized upon the sale of this property, namely, $1,669.84, is a special fund held by the receiver, not as receiver of the corporation, but as an officer appointed by the court to take and sell this specific property; and, as the property sold for less than the liens upon it, the creditors of the corporation have no interest in it. It belongs to the attaching creditors, and no reason is suggested why it should not be paid to them. So far as appears, all the expenses attending the sale have been paid, with the exception of the compensation to be allowed to the receiver for receiving and selling the property, and collecting and paying over the proceeds thereof. It is quite clear that neither the state nor the city has a lien upon this special fund as superior to the attaching creditors. By the attachment, a specific lien was created to which this property was subject; and, when the receiver was appointed, this property did not come into his hands as the property of the corporation. It was property held by the sheriff with which to satisfy the specific lien created by the levy under the attachment. We held in the case of Wise v. L. & C. Wise Co., 12 App. Div. 320, 42 N. Y. Supp. 54, that, as no lien had been

acquired by the city or the state prior to the levy of the attachments, the right of the city to apply this property to the payment of taxes was subordinate to that lien. As stated in that case, the attaching creditor had a right to have the sheriff sell this property, and pay the proceeds to him upon his entering final judgment in the action. The title to the property became subordinated to that lien thus acquired, and it is quite clear that neither the state nor the city would have been entitled to take this property out of the hands of the sheriff after he had levied upon it under the attachment, to be applied to the payment of taxes against the corporation; and the receiver received this property "subject to all existing liens by attachment thereupon, which said liens shall follow such property into the hands of said receiver, and remain upon, follow, and attach to the same, and, when the same shall be sold or collected, shall then attach in like manner to any and all proceeds thereof, subject to distribution in due course of law, as may be in this court directed." Thus, when the receiver sold this property, the proceeds in his hands stood subject to the same liens that were upon the property when it was received by him; and these liens are entitled to be paid before any payment is made either to the state or city on account of taxes due from the corporation. This fund of $1,669.84, less the fees of the receiver, which are fixed at 5 per cent. upon that amount, should be paid to the attachment creditors according to their several priorities. This leaves a balance of $999.79, being the total amount remaining in the hands of the receiver, which he holds as receiver of this corporation. Upon that amount, we think, both the city and the state are entitled to a preference, as against the general creditors of the corporation.

The case of In re Receivership of Columbian Ins. Co., 3 Abb. Dec. 242, is controlling upon this question. The tax there claimed was due to the city of New York, and the receiver of taxes had a warrant to collect the same issued to him, under the provisions of the Revised Statutes which are now a portion of the consolidation act (chapter 410, Laws 1882), which warrant was similar to that held by the receiver of taxes in this case. It was there held that the warrant issued to the receiver of taxes gave a right, which was entitled to precedence over the equitable claims of the creditors of the corporation. The right of the people of the state to collect a tax imposed directly by the state is certainly equal to the right of the political divisions of the state (which are merely political, and organized for the convenience of administration) to a priority over the general creditors of the corporation. Such tax is imposed by the state sovereignty for the purpose of providing for the state and local government. And, as was said by the court of appeals in the Columbian Ins. Co. Case, supra:

"The interest subsequently acquired by the creditor was subject to the prior rights of the state; and when the property, by virtue of local process, came to be in custodia legis, it was the duty of the court to respect this priority of right in the application of the funds of the insolvent corporation."

This lien, however, of the state and city, is subject to the general expenses of the receivership; and a sum sufficient to satisfy that

charge should be reserved by the receiver, the balance to be applied to the payment of these taxes of the state and city. The tax to the state of $75 and interest should be first paid, and the balance of the fund in the hands of the receiver, subject to such expenses of the receiver, should be paid to the receiver of taxes of the city of New York on account of the taxes due. The court below directed the receiver to retain in his hands the sum of $1,000, to pay the administration expenses of the receivership and the receiver's commissions. There was nothing before the court from which the amount of the receiver's expenses and commissions could be ascertained. It is clear, however, that there will be sufficient to pay the claim of the state for taxes due from this corporation, and that can be paid at once, and the receiver is directed to retain the balance in his hands until the settlement of his final account, when the amount remaining after deducting what was necessary to pay his commissions and the expenses of closing his trust should be paid to the receiver of taxes · of the city of New York on account of the taxes due to the city from this corporation.

The order appealed from should be modified as herein provided, and, as modified, affirmed, without costs of this appeal. All concur.