SALT LAKE LITHOGRAPHING COMPANY ET AL., PLAINTIFFS, *v*. IBEX MINE AND SMELTING CO. ET AL., DEFENDANTS.   *W. S. McCornick* and *Sierra Nevada Lumber Company,* Defendants and Respondents; *G. W. Black and one hundred and twenty others,* Interveners and Appellants.

MORTGAGES—MECHANICS' LIENS—DEBTS DUE LABORERS—PRIORITY.

Chapter 30, Sess. Laws 1892, declaring that debts of corporations or natural persons due for services performed by laborers within six months before the seizure of the debtor's property on process, or the suspension of his business by the action of creditors, or before his property shall be put into the hands of a receiver or trustee, shall be treated as preferred, does not affect the rights of existing grantees, mortgages, or lien holders.

(No. 818.   Decided July 20, 1897.)

Appeal from the Third district court, Salt Lake county. M. L. Ritchie, *Judge.*

Suit by Salt Lake Lithographing Company and others against the Ibex Mine & Smelting Company and others. G. W. Black and one hundred and twenty other interveners appeal from the decree in favor of plaintiffs. *Affirmed.*

*Samuel A. King* and *B. X. Smith,* for appellant:

Cited:   *Flanders* v. *Murphy,* 25 Pac. 1052; *Marshall* v. *Bank,* 28 Pac. 312; *Carter* v. *Mining Co.,* 23 Pac. 317; *Mohle* v. *Techirch,* 63 Cal. 382; *Walton* v. *May,* 35 S. W. 1108; *Sutton* v. *Dubois,* 45 Pac. 303; *Coscia* v. *Kyle,* 15 Nev. 394; *Sutton* v. *Dubois,* 45 Pac. 303; *Watson* v. *May,* 35 S. W. Rep. 1108; *Water Co.* v. *Easton,* 121 U. S. 388; *Vreeland* v.

*Jersey City,* 37 N. J. Eq. 574; *McMahon* v. *Lundin,* 58 N. W. 827; *Watson* v. *Johnson,* 33 Ark. 737; *Wooten* v. *Hill,* 3 S. E. 846; *Irwin* v. *Miller,* 16 So. 678; Phillip on Mechanic Liens, 3d. ed., sec. 155 and 52 "A"; *Hogan* v. *O'Neill,* 5th Northwestern 490; *Winslow et al.* v. *Urguhart,* 39 Wis. 266; *West Coast Lumber Co.* v. *Newkirk,* 80 Cal. 280; *Manger et al.* v. *Lenroot,* 32 Wis. 542; *Hill* v. *Newmen,* 38 Penn. 151; *Willamette Falls* v. *Remick,* 1 Or. 169.

*Frank B. Stevens,* respondent for Sierra Nevada Lumber Company.

*Frank Pierce,* for respondent W. S. McCornick.

ZANE, C. J.:

This is an appeal by G. W. Black and 120 others, interveners, from the decree of the lower court for the Sierra Nevada Lumber Company and W. S. McCornick for the amounts found to be due them, and directing the receiver of the smelter plant of the Ibex Mining & Smelting Company to convert the same into money, and out of the proceeds to pay—First, the lumber company the amount found due it; second, the amount found due McCormick; and, third, the interveners the amounts found due them respectively. It appears from the record that the lumber company obtained a lien for material furnished the Ibex Company and used in the erection of a smelter plant on its land, and that the lien related to and attached on the 14th day of September, 1894, and that McCornick held a mortgage on the same property, executed on the 18th day of March, 1895, and recorded on the 11th day of the following month; that the mortgage was given by the Ibex Company to secure a note for $60,000, dated the 6th day of March of the same year. It appears further that attachments were levied on the smelter prop-

erty on the 3d day of May, 1895, and the company then ceased to operate its smelter and to do business, and that the court appointed one Humphreys receiver of the smelter on the 11th day of the same month; that he qualified, and took possession of it; that the interveners filed their statements, duly verified, with the officer serving the attachments, within 10 days after the levy of the attachment writs; that some of the interveners worked in the smelter, and others were engaged in extracting ore from the mine and hauling it for the Ibex Company, during the months of February, March, April and May, 1895. The question for decision is, did the court err in holding the lien of the lumber company and the lien of McCornick's mortgage superior to the claims of the interveners? Chapter 30, § 1, Sess. Laws 1892, is as follows: "That hereafter, when the property of any company, corporation, firm or person shall be seized by any process of any court of this territory, or when their business shall be suspended by the action of creditors, or be put into the hands of a receiver or trustee, then in all such cases the debts owing to laborers or servants for work or labor performed within six months next preceding the seizure or transfer of such property shall be considered and treated as preferred debts, and such laborers or employés shall be preferred creditors, and shall be first paid in full; and if there be not sufficient to pay them in full, then the same shall be paid to them *pro rata*, after paying costs. Any such laborer or servant desiring to enforce his or her claim for wages under this act, shall present a statement under oath, showing the amount due after allowing all just credits and set offs, the kind of work for which such wages are due, and when performed, to the officer, person or court charged with such property, within ten days after the seizure thereof on

any writ of attachment, or within thirty days after the same may have been placed in the hands of any receiver or trustee; and thereupon it shall be the duty of the person or court receiving such statement to pay the amount of such claim or claims to the person or persons entitled thereto (after first paying all costs occasioned by the seizure of such property) out of the proceeds of the sale of the property seized." This section declares that debts of a corporation, company, or person, due laborers for labor performed within six months before the seizure of the debtor's property on process, or the suspension of business by the action of creditors, or before the debtor's property shall be put in the hands of a receiver or trustee shall be treated as preferred debts; that the property or funds held under the conditions named shall be appropriated first to the payment of laborers rendering service within the time named. The act does not mention property that may have been sold before the seizure, suspension, or possession designated, or upon which a mortgage may have been executed, or to which the lien of a mechanic or a material man may have attached. At common law, a mortgage passed the title to the mortgagee, subject to redemption. Under our statute it creates a lien,—an interest in the land to the extent of the debt secured; and that interest, being created for a valuable consideration, is equally entitled to protection according to the instrument creating it, as the entire interest or title is upon a conveyance of the fee. And so with the lien or interest in the property of a mechanic or material man. Their labor or material creates, in whole or in part, the building or other improvement. Not so with the laborers of the class to which the interveners belong. They did not perform labor in the erection of the smelter,

or furnish materials therefor. Some of them worked in a mine not a part of the smelter plant, and others hauled ore. The interveners base their right to a preference on the statute. The facts out of which their demand arises are not analogous to *Litzenberger* v. *Trust Co.*, 8 Utah 16, cited by interveners, or *Miltenberger* v. *Railroad Co.*, 106 U. S. 311.

In those cases the railroad employés had continued to operate roads for the benefit of their owners, bondholders, creditors, and the public. Their superior claims were based on equitable principles, not on the statute. When property of a debtor is seized on process, or the business is suspended by the action of creditors, or a receiver or trustee takes possession of it, the act quoted prefers demands for labor of the class named; but such preferment does not affect the rights of existing grantees, mortgagees, or lien holders in good faith. The decree appealed from is affirmed.

BARTCH and MINER, JJ., concur.