SCHMIDTMAN v. ATLANTIC PHOSPHATE & OIL CORP. et al.

(Circuit Court of Appeals, Second Circuit. January 11, 1916.)

Nos. 197, 198.

1. CORPORATIONS ⬸566—RECEIVERS—PRIORITIES—CLAIMS OF EMPLOYÉS.

Labor Law N. Y. (Consol. Law, c. 31) § 9, providing that, upon the appointment of a receiver of a domestic corporation other than a moneyed corporation, the wages of the employés shall be preferred to every other debt or claim, does not give an employé's claim for wages priority over the lien of a mortgage on property of a corporation, as statutes which disturb vested rights are not given such construction, unless their language clearly indicates an intention to change the existing law, and the statute is open to the construction that it gives a preference only in unincumbered assets.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. ⬸566.]

2. CORPORATIONS ⬸559—RECEIVERS—TITLE OF RECEIVER.

A receiver of an insolvent corporation takes the property subject to existing liens; the fact of insolvency and the appointment of the receiver not impairing a valid contract lien.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2241–2252, 2259; Dec. Dig. ⬸559.]

3. CORPORATIONS ⬸566—RECEIVERS—PRIORITIES—CLAIMS OF EMPLOYÉS.

Labor Law N. Y. § 9, providing that, upon the appointment of a receiver of a corporation organized under the laws of that state and doing business therein, the wages of employés shall be preferred to every other debt or claim, refers to the appointment of a receiver of the whole property of the corporation, and not to a receivership in a suit to foreclose a mortgage on a single parcel of real estate owned by the corporation, and the fact that general receivers were first appointed, and that when foreclosure proceedings were instituted the same persons were appointed receivers therein, made no difference.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283–2286; Dec. Dig. ⬸566.]

4. LIENS ⬸12—RIGHT TO PRIORITY OF PAYMENT.

A person who has a specific lien on property is entitled to pay himself out of that property, and if it be insufficient to prove his claim for the deficiency and share with unsecured creditors of his debtor in property not covered by the lien, and no other creditor is entitled to any part of the proceeds of property covered by the lien until the lienor is first paid.

[Ed. Note.—For other cases, see Liens, Cent. Dig. § 18; Dec. Dig. ⬸12.]

Appeals from the District Court of the United States for the Eastern District of New York.

Bill by Waldemar Schmidtman against the Atlantic Phosphate & Oil Corporation. From a decree, George Haefer, Jr., and others, appeal. Reversed.

The Phosphate Corporation, above named, was organized under the laws of New York in 1913, and on July 1, 1913, it executed to the Astor Trust Company, as trustee, a mortgage upon its real estate, vessels, and certain other property to secure $1,438,000 face amount of interest-bearing bonds. On October 19, 1914, Schmidtman, a general creditor, filed a bill in the District Court, Eastern District of New York, alleging insolvency of the corporation and praying for the appointment of a receiver. Thereupon the court appointed Messrs. Ocland and Coxe temporary receivers. Claims of creditors were advertised

for, filed, and proved, and receivers filed a report thereon. On Dcember 12, 1914, the mortgage trustee brought suit for foreclosure and sale because of default under the terms of the mortgage. The creditors' bill and foreclosure suit were consolidated, and receivership in the former suit was duly extended to all properties and franchises, covered by the mortgage. On March 4, 1915, decree of foreclosure and sale was entered, and the mortgaged property was thereafter sold for a gross price of $433,800. Many of the claims which had been filed were so-called laborer's claims. The question arose whether, in the case of an insolvent New York corporation, debts of the corporation due to its laborers should be paid out of proceeds arising upon foreclosure sale of real estate, vessels, and other property, before distribution of such proceeds upon the bonds and coupons secured by the mortgage? The question, coming duly on before the court, was answered by it in the affirmative, and decree was entered to that effect. From such decree this appeal is taken by the mortgage trustee and by representatives of the bondholders. This question of priority of labor claims is the only one here presented. Certain other questions as to various maritime liens on some of the vessels are not here involved.

White & Case and Sullivan & Cromwell, all of New York City (Royall Victor and Ralph L. Collett, both of New York City, of counsel), for appellants Astor Trust Co. and others.

George R. Cooper, of New York City, for appellant Wadman.

F. Healy, of Providence, R. I., for wage claimants.

Alexander & Ash, of New York City (Mark Ash and E. Ash, both of New York City, of counsel), for appellant Haefer.

F. M. Silvia and Louis Shabshelowitz, both of Fall River, Mass., and Frank Healy, of Providence, R. I., for employés.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] The basis of the claim to priority is found in section 9 of New York Labor Law (chapter 415, § 8, Laws of 1897), which reads as follows:

"Sec. 9. Upon the appointment of a receiver of a partnership or of a corporation organized under the laws of this state and doing business therein, other than a moneyed corporation, the wages of the employés of such partnership or corporation shall be preferred to every other debt or claim."

[2] Manifestly the statute involved is in derogation of the common law and of common rights. It is a well-established principle that a receiver of an insolvent corporation takes the property subject to existing liens. The fact of insolvency and the fact of the appointment of a receiver does not impair a valid contract lien. In this case the insolvent is not a public service corporation, such as a railroad, and therefore the principles enunciated in a well-known group of cases do not apply. Impairment of existing contract liens must be found in a statute, or they will not be found at all. Statutes which disturb vested rights are to be closely scrutinized, and are not to be given such construction, unless their language clearly indicates an intention on the part of the Legislature to change the existing law.

The original act was passed in 1885 (chapter 376 of the Laws of that year). The only changes effected by the later act are these: (1) To include partnerships; (2) to strike insurance companies out of the exception; (3) to describe the beneficiaries generally as "employés," receiving wages, instead of "employés, operatives and laborers," receiving wages; and (4) to strike out the concluding words of the act

of 1885, "and shall be paid by the receiver from the moneys of such corporation which shall first come to his hands." Why these last-quoted words were struck out we do not know. There seems to be no special sigificance in their deletion, since the words "shall be preferred to every other debt or claim" are found in both acts.

Since this act has been on the statute book for 30 years, it might be expected that opinions of the state courts would be found definitely construing it. Strange to say such is not the fact. The briefs cite the following cases: People v. Remington, 45 Hun (N. Y.) 329; Franklin Trust Company v. N. A. R. R. Company, 11 App. Div. 249, 42 N. Y. Supp. 211; Matter of Muller, 21 App. Div. 629, 47 N. Y. Supp. 277; Matter of Stryker, 158 N. Y. 526, 53 N. E. 525, 70 Am. St. Rep. 489; People v. Remington, 109 N. Y. 631, 16 N. E. 680; Palmer v. Van Santvoord, 153 N. Y. 612, 47 N. E. 915, 38 L. R. A. 402. These deal with other questions arising under the statute, e. g., who is and who is not an "employé," but, with the exception of an expression of opinion by a dissenting judge, there is nothing in them to indicate that the courts of this state construe the statute as displacing existing contract liens.

[3] Since there is not satisfactory state court construction, we are forced to construe the act ourselves. The words "upon the appointment of a receiver of a corporation" must mean the appointment of a receiver of the whole property of the corporation. Certainly the section was not intended to apply where the foreclosure of a mortgage on a single parcel of real estate, owned by corporation, brought about the appointment of a receiver in mortgage foreclosure.

In the case at bar general receivers were first appointed. The mere circumstance that when foreclosure proceedings were instituted the same persons were appointed receivers therein makes no difference. The question is this: Does the section displace a lien given to the holder of a debt by mortgage made subsequent to the statute and properly recorded, etc.?

[4] The security afforded by a lien well recognized in law and equity has always been held entitled to consideration. The person who has a specific lien on property is entitled to pay himself out of that property, and, if it be insufficient, then to prove his claim for deficiency and share with unsecured creditors in the proceeds of property not covered by his lien. No other creditor is entitled to any part of the proceeds of property covered by lien until the lienor is first paid. These principles have been so well-settled for so long that it might fairly be supposed that a Legislature seeking to exclude their application in certain cases would declare its intention in unmistakable language. Certainly the language of this statute is not "unmistakable"; it may be construed to subordinate all specific liens to claims for wages of employés; it may also be construed to give the latter preference only in unincumbered assets.

An excellent illustration, showing how similar legislation has impressed other courts, will be found in two Indiana statutes. Section 7058, Burns' Ann. Stat. Ind. 1901, provides that all debts due any person for manual labor shall be a preferred claim in all cases against

a corporation, when its property shall pass into the hands of a receiver; and such receiver shall first pay in full all debts due for such labor before paying any other except legitimate costs and expenses. But the Indiana Supreme Court in McDaniel v. Osborn (1905) 166 Ind. 1, 75 N. E. 647, 2 L. R. A. (N. S.) 615, 117 Am. St. Rep. 354, held that:

"There is no intent manifest in the title, or from any language employed in the body of the statute under consideration, that an employé should have or could acquire a lien upon all the property of his employer on account of general manual or mechanical labor. * * * There is a very clear and marked distinction between a preferred debt and a debt secured by a specific lien. A general debt cannot become superior to another secured by a lien, unless expressly made so by a valid law; and, if a statutory lien is to be created, the language employed should be specific in declaring the fact, as well as the nature, character, and extent of such lien. * * * The obvious purpose of the Legislature in this enactment was to give laborers of the class named in the statute preference in the payment of their claims from the estate of the insolvent employer, in the same sense and to the same extent that preference is given in the payment of funeral expenses under the statute for the administration of decedents' estates."

The same state, however, passed another statute specifically dealing with coal miners. Section 5471, R. S. 1881; section 8596, Burns' Ann. Stat. Ind. 1908. It gave the miners a lien on the mine and machinery, and provided that "such liens shall be paramount to all other liens except the lien of the state for taxes." As might be supposed, the Indiana Supreme Court in Warren v. Sohn, 112 Ind. 213, 13 N. E. 863, held that a mortgage lien was subordinate to a miner's lien.

The claimants refer to the following authorities: To Graham v. Magann Fawke Company, 118 Ky. 192, 80 S. W. 799, 4 Ann. Cas. 1026; but in that cause the statute provided that the "lien of such employés shall be superior to the lien of any mortgage or other incumbrance." To Wimberly v. Mayberry, 94 Ala. 240, 10 South. 157, 14 L. R. A. 305; but in that cause the statute provided that the employé's lien "shall have priority over all other liens, mortgages, or incumbrances." To Sitton v. Dubois, 14 Wash. 624, 45 Pac. 303; but in that cause the statute provided that "the lien created by the provisions of this section shall be prior to all other liens." These three opinions are not conclusive in the construction of the language of the New York statute. They indicate, however, that Legislatures of other states, which intended to have employé's wages' claims displace liens, evidently thought it important to say so in express terms.

In three other states the language of the statute is substantially as it is in the New York act. In New Jersey the statute provides that the laborers shall "have a lien upon the amount due to them respectively, which shall be paid prior to any other debt or debts of the corporation." But the New Jersey courts have held that this secured to laborers priority only after the liens existing on the property at the adjudication of insolvency shall have been discharged. Hinkle v. Camden Safe D. Company, 47 N. J. Eq. 333, 21 Atl. 861; Wright v. Wynockie Iron Company, 48 N. J. Eq. 29, 21 Atl. 862. In Missouri the statute provides that "such laborers or employés shall be preferred creditors, and shall be first paid in full." But the Court of

Appeals of Missouri, in Fitzgerald v. Meyer, 65 Mo. App. 665, held that there was "nothing in the statute to show that the lawmakers meant to disturb the prior vested rights of those holding mortgage security." A similar statute in Utah was similarly construed. Salt Lake L. Company v. Ibex M. & S. Company, 15 Utah, 445, 49 Pac. 832.

In construing a statute like this it is a safe rule for federal courts to follow, by analogy, the construction given by the United States Supreme Court to section 6372, U. S. Compiled Statutes (Rev. St. U. S. 3466), originally passed in 1799 (Act March 2, 1799, c. 22, § 65). That section gives to the United States, on the death of an insolvent debtor whose estate is not sufficient to pay "all debts due from him," a priority of payment, declaring that the "debts due to the United States shall be first satisfied." Interpreting this statute literally and upon the theory that a sum due under a mortgage is a debt under the statute, then the courts should have held that the government's debt is to be satisfied before the debt secured by a mortgage. But the Supreme Court has held otherwise consistently from the beginning, having laid down the rule in Conard v. Atlantic Insurance Co., 1 Pet. 386, 7 L. Ed. 189, in an opinion written by Justice Story, that the statute gives a mere right of prior payment out of the general funds of the debtor and that it does not take precedence over a mortgage debt. It is just as true now as it was then that the Supreme Court has never yet decided that the priority the statute gives divests a specific lien.

The rule thus laid down is that by which we should be guided. The decree of the District Court should be reversed. This disposition of the cause will make it unnecessary to determine whether or not there was error in refusing to classify some of these claimants as coming within the terms of the statute.

Decree reversed.